# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JOHNATHON HARTER,

     Petitioner,

-vs-                                     Case No.  8:08-CV-202-T-27EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

     Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1).

Respondent filed a Motion to Dismiss Petition as Time-Barred, Response and Memorandum of Law

(Dkt. 8).  Petitioner filed a response/reply to the Respondent's motion to dismiss/ response (Dkt. 13),

and a supplemental reply (Dkt. 16).  After consideration, Petitioner's petition is DENIED.

## PROCEDURAL HISTORY

     On March 21, 1997, Harter, while intoxicated, ran the vehicle he was driving into the rear

of a van stopped in the emergency lane of an interstate.  Two children in the van were killed, and

their parents, and a third child, sustained injuries.  Petitioner was charged by Information with two

counts of DUI manslaughter, one count of DUI serious bodily injury, and two counts of DUI with

property damage or personal injury (misdemeanors).  (Respondent's Ex. 1, Vol. I at pp 16-19).  On

March 12, 1998, Harter entered an "open" plea of no contest as charged.  (Id. at pp. 68-80).  He was

sentenced to 26 years in prison on each of the three felony counts, to run concurrently, and to time

served on each of the misdemeanor counts.  (Id. at pp. 55-65).

Petitioner appealed his sentences. (Respondent's Ex. 2). On June 23, 2000, the appellate court remanded the case to the trial court to reconsider the sentences. (Respondent's Ex. 11); *Harter v. State*, 779 So. 2d 391 (Fla. 2d DCA 2000) [table].

On remand, Petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 or, in the alternative, to withdraw the plea under Rule 3.170(f) on December 11, 2000 (Respondent's Ex. 12, Vol. I at pp. 36-49). An evidentiary hearing was conducted on September 20-21, 2001, solely on the Rule 3.170(f) motion to withdraw the plea (Id. at Vols. V, VI at pp. 594-633). On October 15, 2001, the state post-conviction court denied Petitioner's motion to withdraw his plea (Respondent's Ex. 12, Vol. II). On December 6, 2002, the appellate court per curiam affirmed the denial of Petitioner's Rule 3.170(f) motion (Respondent's Ex. 16); *Harter v. State*, 835 So. 2d 1125 (Fla. 2d DCA 2002) [table]. The appellate court mandate issued on January 3, 2003 (Respondent's Ex. 17).

Meanwhile, on November 29, 2001, the state court resentenced Petitioner to 25 years prison on each felony count (Respondent's Ex. 19 at pp. 36-40). Petitioner appealed the resentencing judgment but later took a voluntary dismissal (Respondent's Ex. 22). The appellate court dismissed the appeal on February 13, 2003 (Respondent's Ex. 23); *Harter v. State*, 840 So. 2d 235 (Fla. 2d DCA 2003) [table].

On November 25, 2003, Petitioner filed a Rule 3.850 motion for post-conviction relief (Respondent's Ex. 25, Vol. I at pp. 38-52). An evidentiary hearing was held on November 19, 2004 (Id. at pp. 87-209), and December 17, 2004 (Respondent's Ex. 25, Vol. II at pp. 210-303). On December 21, 2004, Petitioner filed a "Notice of Supplemental Issue" in which he raised a new claim, to wit, that his sentence was illegal under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and

*Blakely v. Washington*, 124 S. Ct. 2531 (2004) (Id. at pp. 62-63). On January 25, 2005, the state post-conviction court denied Petitioner's Rule 3.850 motion (Respondent's Ex. 25, Vol. I at pp. 64-209; Vol. II at pp. 210-380). The appellate court per curiam affirmed the denial of the Rule 3.850 motion (Respondent's Ex. 30); *Harter v. State*, 923 So. 2d 501 (Fla. 2d DCA 2006) [table]. The appellate court mandate issued on March 17, 2006 (Respondent's Ex. 31).

On June 12, 2006, Petitioner filed a motion to correct illegal sentence pursuant to Florida Rules of Criminal Procedure, Rule 3.800(a) (Respondent's Ex. 32). The state post-conviction court denied the Rule 3.800(a) motion on May 25, 2007 (Respondent's Ex. 34). On October 3, 2007, the appellate court affirmed the denial of the Rule 3.800(a) motion (Respondent's Ex. 37); *Harter v. State*, 969 So. 2d 379 (Fla. 2d DCA 2007). The appellate court mandate issued on December 17, 2007 (Respondent's Ex. 40).[1]

Petitioner filed the instant petition for writ of habeas corpus in this Court on January 29, 2008 (Dkt. 1).[2]

## TIMELINESS

Respondent asserts that the petition should be dismissed as time-barred (Dkt. 8 at pp. 19-22). The Court disagrees.

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) created a new limitations period for petitions for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. "A 1-year period

---

[1]On July 18, 2006, Petitioner filed a petition for writ of habeas corpus in this Court in case no. 8:06-cv-1338-T-30MAP. At that time, Petitioner's state Rule 3.800(a) motion was still pending. On July 20, 2006, the petition was dismissed without prejudice to allow Petitioner the opportunity to exhaust his state court remedies.

[2]A pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States,* 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn,* 993 F.2d 776, 780 (11th Cir. 1993). The petition, however, does not indicate the date on which it was delivered to prison officials for mailing.

of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review...." 28 U.S.C. §2244(d)(1)(A). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Petitioner's judgment became final on May 14, 2003, ninety days after the appellate court dismissed his direct appeal of the resentencing judgment on February 13, 2003. *See Bond v. Moore*, 309 F.3d 770, 772 (11th Cir. 2002)(one-year limitations period for Florida prisoner's federal habeas petition started to run when time expired for filing petition for certiorari from state high court's denial of discretionary review). *See also Latham v. United States,* 527 F.3d 651 (7th Cir. 2008) (following voluntary dismissal of direct appeal, AEDPA limitation period did not begin to run until 90 days for seeking certiorari review expired); *U.S. v. Gentry*, 432 F.3d 600, 604 n.2 (5th Cir. 2005); *Brandon v. McNeil*, 2009 U.S. Dist. LEXIS 129755, *12, 2009 WL 559530, at *4 (N.D. Fla. Mar. 4, 2009)(citations omitted).[3]

Subsection (2) of § 2244(d) provides that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Petitioner properly filed a Rule 3.850 motion for post-conviction relief in the trial court on November 25, 2003,

---

[3]Respondent cites to no case law in support of his position that Petitioner's judgment was final on February 13, 2003, the date on which the appellate court dismissed Petitioner's direct appeal from the resentencing judgment (Dkt. 8 at pp. 19-20).

4

after one hundred ninety-five days of the federal limitations period had elapsed. One hundred seventy days remained in the federal limitations period.

The Rule 3.850 motion remained pending until March 17, 2006, when the appellate mandate issued in Case No. 2D05-1019. Petitioner properly filed a Rule 3.800(a) motion for post-conviction relief in the trial court on June 12, 2006, after another eighty-seven days of the federal limitations period had elapsed. Eighty-three days remained in the federal limitations period.

The Rule 3.800(a) motion remained pending until December 17, 2007, when the appellate mandate issued in Case No. 2D07-3022. Petitioner filed his federal habeas petition in this Court on January 29, 2008, after another forty-three days of the federal limitations period had elapsed. Forty days remained in the federal limitations period. Thus, Petitioner's petition was timely (195 + 87 + 43 = 325 days). Accordingly, Respondent's motion to dismiss the petition as untimely is denied.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law, including constitutional issues, must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362, 386 (2000). It is not enough that the federal courts believe that the state court was wrong; the state court decision must have been "objectively unreasonable." *Id.*; *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

**Ineffective Assistance of Counsel Standard**

5

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland's* two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

The two-pronged *Strickland* test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill*, 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id*.

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id*. "The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on

going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial." *Upshaw v. United States*, 2008 U.S. Dist. LEXIS 16985, 2008 WL 638261 at *1 (M.D. Fla., Mar. 5, 2008) (citing *Hill v. Lockhart*, 474 U.S. at 59).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995)("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a

8

constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted). The *Schlup* Court stated the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995)(denying certificate of probable cause)(footnote omitted).

## DISCUSSION

**Ground One**

In Ground One, Petitioner contends both that his nolo contendere plea was involuntarily entered because his counsel misled him regarding the consequences of the plea, and that counsel's actions denied him his Sixth Amendment right to effective assistance of counsel.  Specifically, he asserts that: 1) at the time he entered his plea, his mental deficiencies rendered him incapable of understanding the consequences of his plea; 2) counsel incorrectly informed him that if he proceeded to trial, the court could not sentence him as a Youthful Offender; 3) counsel told him that if he proceeded to trial and lost, the court would most likely sentence him at the top of the Sentencing

9

Guidelines; 4) counsel told him that if he entered a plea, the court would most likely impose a downward departure sentence below the sentence recommended by the Sentencing Guidelines; 5) counsel did not discuss with him the involuntary intoxication defense, which was supported by the evidence, nor the possibility that Petitioner could be convicted of the lesser included offense of vehicular homicide if he proceeded to trial; and 6) counsel abandoned Petitioner's viable motion to suppress the blood-alcohol reading.

The state post-conviction court rejected these claims in Petitioner's Rule 3.850 motion:

On November 25, 2003, the Defendant filed a Motion for Post-Conviction Relief and Incorporated Memorandum of Law. The Defendant raises three Claims in his motion and these Claims, together with the specific allegations, are as follows:

Claim One: Defendant's Plea was Involuntary
a. The Defendant was not aware of the defense of involuntary intoxication prior to making his plea;
b. The Defendant was not aware that the jury could have returned a verdict to the lesser-included offence of vehicular homicide;
c. The Defendant was not aware that he could have qualified for Youthful Offender status even upon going to trial;
d. Defendant would not have entered a plea had he known that he was surrendering his right to trial without any benefit for doing so.

Claim Two: Ineffective Assistance of Counsel
a. Counsel did not give consideration to the lesser-included offense of vehicular homicide or the defense of involuntary intoxication;
b. Counsel failed to argue a viable Motion to Suppress the blood evidence without any benefit to the Defendant;
c. Counsel misled Defendant into believing that he would only qualify for Youthful Offender status upon entering a plea and not by going to trial;
d. Counsel advised him to enter a plea without any beneficial or tactical advantage for doing so.

*** 

In its April 2004 Order Directing the State to Respond, the Court found that, upon initial review, the allegations in Claim One were previously raised in the Defendant's motion to withdraw plea and, thus, appeared successive. For this reason, the Court's preliminary finding was that these allegations should not be litigated again in the

3.850 proceedings; the State likewise set forth this argument in its response. *See Dooley v. State*, 789 So 2d 1082 (Fla. 1st DCA 2001).

At the start of the evidentiary hearing, this Court limited the scope of the hearing to the ineffective assistance of counsel issues raised in Claim Two of Defendant's Motion for Postconviction Relief. The Court takes note, however, of the obvious interrelationship of Defendant's first two claims. The alleged involuntariness of Defendant's guilty plea is wholly dependant upon the allegations that his counsel was ineffective. *See LeDuc v. State*, 415 So. 2d 721, 722 (Fla. 1982). While the Court finds the allegations in Claim One to be successive, the Defendant was nonetheless afforded ample opportunity to address the overlapping Claim One allegations via the Claim Two testimony of the Defendant and his former counsel, Mark Lipinski. Therefore, this Court, in an abundance of caution, will subsequently respond to the merits of Claim One in the event it has not been properly deemed successive.

### Ineffective Assistance of Counsel Standard

The court examines a claim of ineffective assistance of counsel in light of the seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In *Strickland*, the U.S. Supreme Court set forth the standard a convicted defendant must meet to prevail on an ineffective assistance motion:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687, 104 S.Ct. at 2064. In examining a claim of ineffective assistance of counsel under this two-tiered process, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*. at 697, 104 S.Ct. at 2069. Consequently, the court need not make a specific ruling on the performance by trial counsel when "it is clear that the prejudice component is not satisfied." *See Kennedy v. State*, 547 So. 2d 912,914 (Fla. 1989) (citing *Strickland*). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689, 104 S.Ct. at 2065. Likewise, the defendant has the duty to surpass the firm presumption "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v.*

11

*Louisiana*, 350 U.S. 91, 101,76 S.Ct. 158, 164 (1955)).

## Summary of Testimony at the Evidentiary Hearing

All citations in this Order to the postconviction evidentiary hearing shall be referred to as "R" followed by the hearing date and the appropriate page number.

In the interest of judicial economy, counsel for both the Defendant and the State agreed to introduce into evidence at this hearing the transcripts of the testimony given at the September 20-21, 2001, hearing on Defendant's motion to withdraw plea. At the November 19, 2004, and the December 17, 2004, evidentiary hearings, counsel for the Defendant called two witnesses to testify, Defendant's former counsel, Mark Lipinski, and the Defendant, Johnathon Harter. The testimony at the evidentiary hearing focused on the following subissues contained in Claim Two of Defendant's postconviction motion:

**a)  Defendant alleges that Counsel did not give consideration to the lesser-included offense of vehicular homicide or the "viable defense of involuntary intoxication."**

In his motion, the Defendant contends that his attorney, Mr. Lipinski, failed to "consider, explain, and/or discuss" the defense of involuntary intoxication that, according to Defendant, is supported by the facts of this case and the expert testimony. Further, Defendant alleges that his counsel was ineffective because he failed to examine the potential for the Defendant to be charged under the lesser-included offense of vehicular homicide, a third degree felony. During the evidentiary hearing, the Defendant testified that if he knew about the defense of involuntary intoxication, he would never have entered a plea and would have gone to trial instead. ( R 12/17/04, p. 54).

Mr. Lipinski testified during the evidentiary hearing that based upon the evidence in this case and counsel's experience, the defense of involuntary intoxication was not at all viable. Counsel added that, after his preliminary consideration, no circumstances existed in Defendant's case that would have substantiated this type of defense. Defendant admitted to Mr. Lipinski that he had tried alcohol prior to March 27, 1997, and made such admissions on the witness stand during his sentencing hearing. ( R 11/19/04, p. 118). According to Mr. Lipinski, "He certainly knew what whiskey was, he knew what Seagram 7 was, he had been intoxicated." ( R 11/19/04, p. 118). The Defendant gave counsel several conflicting accounts of his drinking behavior on the afternoon of the accident ( R 11/19/04, p. 119); in one account, the Defendant admitted to his counsel, and the Court at his sentencing hearing, that he mixed his own final two drinks before driving. ( R 12/17/04, p. 89-90). Counsel testified that he discussed this defense with Defendant's parents; however, he cannot recall if the Defendant was present for these discussions.

Under questioning by the Court about his knowledge that he was drinking alcohol, Defendant testified, "After I downed it I told Fred that it was, I said, 'Man, that's some nasty tasing [sic] stuff.' And Sammy had already left with the alcohol, and all he had was Sprite. And that's what I mixed." ( R 12/17/04, p. 92). Defendant also acknowledged that he had been intoxicated on prior occasions. ( R 12/17/04, p. 93).

With respect to the lesser-included offense of vehicular homicide, Mr. Lipinski acknowledged in his testimony that he did not give much attention to this issue. Mr. Lipinski added that his main focus was the DUI manslaughter charges and the fact that there were "tremendous problems overcoming certain parts of [the case]." ( R 11/19/04, p. 58). Mr. Lipinski testified that sufficient evidence existed to sustain a verdict of vehicular homicide; however, this was a moot issue because the Defendant's case never made it to trial. According to Mr. Lipinski, the case never made it to trial because of the irrefutable evidence against the Defendant including, at a minimum, proof that the Defendant was driving, the two blood alcohol test results of .22 and .24, and the deaths of two children. This created an extremely high probability that the State would be able to prove DUI manslaughter and the Defendant would be at risk of receiving maximum prison time. ( R 11/19/04, p. 58-59,63-64).

**b) Defendant alleges Counsel was ineffective in his failure to argue a viable Motion to Suppress.**

Defendant alleges that his counsel "abandoned" a viable Motion to Suppress without any resulting benefit to the Defendant. According to the Defendant, "[t]hings could have come out [in the motion to suppress hearing] that would have put me in a better position for taking it to trial." ( R 12/17/04, p. 61) More specifically, Defendant testified that the motion hearing would have given him a "better feel" for the State's witnesses and what would potentially come out at trial. ( R 12/17/04, p. 61-62).

Mr. Lipinski testified that he notified the Defendant and his family that, in his professional opinion based on the facts of this case, the Defendant would be unlikely to prevail on a motion to suppress the blood alcohol evidence. ( R 12/17/04, p. 9). Any argument about potential contamination of the legal blood results was weakened significantly by the equivalent results from the separate, medical blood tests performed on Defendant at the hospital. ( R 12/17/04, p. 15). In addition to Defendant's low probability of success, counsel testified that there was an additional, substantial risk of very damaging testimony coming out at the motion hearing regarding Defendant's egregious conduct at the scene of the accident. ( R 12/17/04, p. 10). Counsel added that this testimony could have prejudiced Defendant's case by placing him in a highly unfavorable light prior to trial. Mr. Lipinski further testified that, even if the Defendant would have prevailed on a motion to suppress, there was still significant evidence against him notwithstanding the blood alcohol test results.

13

( R 12/17/04, 4, p. 12).

### c) Defendant alleges Counsel misled him into believing that he would only qualify for Youthful Offender status by entering a plea.

Defendant alleges that his counsel misled him into believing that he could only qualify for youthful Offender status if he entered a plea to the charges, and he would not be eligible for such status if he chose to go to trial. Defendant then testified in the evidentiary hearing that his mind was so "preoccupied by the pain" from the accident that this impacted his ability to comprehend counsel's explanations of Youthful Offender criteria. FN1. Defendant admitted during cross-examination that he read the sentencing report prepared for him, including the portion pertaining to Youthful Offender status. ( R 12/17/04, p. 67).

Mr. Lipinski denied Defendant's allegations and testified that he fully informed the Defendant that Youthful Offender status, while legally possible, was at the discretion of the judge. Mr. Lipinski testified "there was a very little chance of Judge Dubensky, for two deaths, to impose four years Youthful Offender incarceration and two years probation." ( R 11/19/04, p. 86).

Mr. Lipinski hired the National Center and Institute for Sentencing Alternatives ("NCIA") to prepare a report with recommendations to be included in Defendant's sentencing package for the Court. ( R 11/19/04, p. 55,70). Mr. Lipinski gave NCIA information on Florida's Youthful Offender statute for their analysis. ( R 11/19/04, p. 70). Together with this research, Mr. Lipinski concluded that he believed the Defendant's chance of obtaining Youthful Offender status was "very unlikely." Mr. Lipinski further testified:

> I think that my job was to throw all possibilities to the Judge and argue for the one that I think is most likely that my client would accept and the Judge would be most likely to consider. The problem about Youthful Offender is that I don't believe, considering there were two deaths, the Judge would consider it. ( R 11/19/04, p. 74).

> FN1 During cross-examination, the State questioned Mr. Lipinski about the Defendant's medical issues as related to his competency in the following colloquy:

> Q: At no time did Dr. Regnier ever suggest you file a motion of incompetency in this case, correct?
> A: No.
> Q: And at no time did you do that, correct? . .
> A: No. I didn't.
> Q: And if you felt, based upon your experience and being an officer

14

of the court, if you felt there was some problem with your client understanding what was going on in the case and what was happening. that you would be obligated to file a motion, correct?
A: I would have done it in a heartbeat.
( R 12/17/04, p. 18).

### d) Defendant alleges Counsel advised him to enter a plea without any beneficial or tactical advantage for doing so.

Defendant alleges in his Motion that Mr. Lipinski advised him to plead "straight up" without any beneficial or tactical advantage and, thus, the Defendant needlessly forfeited his right to a trial.

Mr. Lipinski testified that, after spending "hundreds" of hours on this case, he recommended to the Defendant and his family that entering a plea would provide him with the best chances of a downward departure sentence. ( R 11/19/04, p. 84,98, 110). Counsel acknowledged in his testimony that the amount of unfavorable evidence placed the Defendant "between a rock and a hard place." ( R 11/19/04, p. 110). Mr. Lipinski testified that he was "convinced that Mr. Lee [prosecutor] would have asked for more than 26 years" if the Defendant went to trial and lost. In addition, as a result of the trial, the State would have even more evidence to support the request for more prison time, and Defendant would have less of a chance for a downward departure. ( R 11/19/04, p. 84).

Mr. Lipinski testified that he hired his own accident reconstructionist whose findings were consistent with those of law enforcement, that the Defendant was driving at a high rate of speed in the emergency lane when he struck the stationary van. ( R 11/19/04, p. 105). Counsel also consulted with an independent toxicologist regarding Defendant's blood tests, and received a report of findings similar to the State's case showing the Defendant was approximately three times over the legal blood alcohol limit. ( R 11/19/04, p. 106). According to Mr. Lipinski, the toxicologist's report revealed that the Defendant would have had to consume approximately nine alcoholic drinks to attain his blood alcohol level. ( R 12/17/04, p. 35). Furthermore, Mr. Lipinski was aware of testimony that would have revealed the Defendant made extremely prejudicial, distasteful and pejorative statements to the emergency medical technicians about the deceased children. ( R 12/17/04, p. 10).

Mr. Lipinski testified that he advised the Defendant and his family that entering a plea would be in his best interest for the above-mentioned reasons, the high level of emotionality involved in this case FN2, the graphic nature of the crime scene photos FN3, the tragic deaths of two children, Defendant's inconsistent statements, and the significant evidence against the Defendant. During the State's cross-examination, Mr. Lipinski explained to the Court why he felt it was a better legal strategy for Defendant to enter a plea:

15

I didn't recommend going to trial, but if [the Defendant] wanted to, I indicated I would be happy to do so. ( R 12/17/04, p. 20).

It was an extraordinarily difficult decision, Mr. Lee. I went over in one of my letters [to the Defendant and his family] the elements of DUI manslaughter, that they had— he had to be driving and in control of the vehicle, and that was very easy for the State to discern; that he was [sic] either had a blood alcohol of over .08 at the time of the accident or it was DUI by traditional measures; and that at the time there was at least some sort of degree of causation that he caused the accident, and there wasn't any question about that.

My problem was that I thought that the State could prevail upon the elements in the case.

On the other hand, pleading somebody straight up and trying for a downward departure, it is a very difficult situation when you are dealing with so much time. It's sort of being between a rock and a hard place. My concerted opinion is I believe he had valid reasons for departure. And that although I certainly believed that he would receive some prison time, it was certainly my hope that there were valid reasons for departure, and that I could convince Judge Dubensky to find a reason for downward departure and that he would get something far less than the mandatory minimum sentence. ( R 12/17/04, p. 19-20).

I thought that an acceptance of responsibility without going to trial would be something that Judge Dubensky would look favorably upon. It would be a horrible trial for all concerned, it would be horrible for the victim's family, it would be horrible for Mr. Har[t]er, and horrible for his family. It would be a bloodbath. ( R 12/17/04, p. 22).

FN2 Mr. Lipinski testified that "there were grown men who have seen a lot in their times-EMT's, firemen-that literally were crying in their deposition.. .the court reporter was crying during the deposition." ( R 11/19/04, p. 100).

FN3 Mr. Lipinski acknowledged that the crime scene photos showed "two young children who were basically crushed and impacted in the back of that van." ( R 11/19/04, p. 101).

## Postconviction Claim Two: Ineffective Assistance of Counsel

To obtain postconviction relief, the Defendant "must show that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Oisorio v. State*, 676 So. 2d 1363, 1365 (Fla. 1996).

Upon completion of the evidentiary hearing, this Court finds that there is no reliable evidence that Defendant's trial counsel was ineffective or deficient in any manner. On the contrary, the evidence unmistakably demonstrates the opposite, that Defendant's trial counsel was extremely judicious in his examination of the highly sensitive and troubling issues surrounding this case. The evidence against the Defendant was overwhelming and, under these circumstances, counsel made every attempt to utilize expert resources and his experience in "thousands" of DUI cases ( R 11/19/04, p. 101) to mitigate the possibility of the Defendant spending the majority of his life in prison.

The testimony in this evidentiary hearing revealed that Mr. Lipinski was in regular verbal and written communication with the Defendant and his family, always providing them with a realistic picture of the Defendant's case and legal options. Mr. Lipinski testified that he had "a great deal of contact with the parents. We had lots of meetings, particularly on the weekends. There were times that Aaron himself was not present for various reasons... Well, one was he was Baker Acted. Some times, I don't believe he wanted to come." ( R 11/19/04, p. 111).

The Court finds that counsel employed sound legal strategy with his client's best interests in mind and acted well within the bounds of reasonable professional assistance. For example, counsel attended the depositions in the civil case purposefully to keep the State out of them; this was for any tactical advantage that could be gained from knowing information before the State could learn of it. ( R 11/19/04, p. 99). Additionally, counsel hired experts to analyze the blood test results, Defendant's mental health status, and sentencing alternatives in order to explore all areas that could potentially benefit Defendant's case. During the sentencing hearing, Mr. Lipinski introduced psychologist Dr. Regnier, Defendant's mother, and evidence showing Defendant was more of a follower than a leader to support his request for a downward departure. ( R 12/17/04, p. 26).

Even if the Court were to arrive at the unlikely finding that the Defendant's former counsel was ineffective, relief is not warranted unless the Defendant can prove he was prejudiced. After considering the totality of the evidence, the Court finds the Defendant failed to meet both prongs of the *Strickland* standard on this issue.

## Postconviction Claim One: Involuntary Plea

Defendant has the burden to prove that a withdrawal of his plea is necessary to correct a manifest injustice and the Defendant has not met that burden. *See LeDuc*, 415 So. 2d at 722-23; *See also State v. Wiita*, 744 So. 2d 1232 (Fla. 4" DCA 1999).

17

Based upon Defendant's failure to demonstrate his counsel was ineffective under the *Strickland* standard, the allegations brought forth by Defendant in Claim One concurrently fail.

Defendant's claims that he was unaware of the defense of involuntary intoxication and the lesser-included offense of vehicular homicide do not succeed upon the Court's examination of the exhibits and the testimony revealing that Mr. Lipinski reviewed these options with Defendant and his family. It was clear Mr. Lipinski remained in constant communication with Defendant and his family through numerous letters and personal contacts. During the times when the Defendant either refused or was unable to meet with counsel, Mr. Lipinski had regular meetings with his parents to review the legal options as evidence became available. Mr. Lipinski testified that he explained to the Defendant that, while it was possible he could qualify for Youthful Offender status, it was very unlikely given the extreme nature of this case. Finally, the testimony and evidence at this hearing clearly demonstrated there were significant factors in favor of Defendant entering a plea. The evidence and testimony reveals that the Defendant was likewise apprised of the clear advantages of entering a plea versus going to trial; by entering a plea, Defendant's chances of obtaining a downward departure sentence were greater. The weight of the evidence against the Defendant together with the horrific nature of the accident, including the anticipated emotional testimony and graphic photos, would have significantly reduced any chances the Defendant had for a downward departure sentence if the case went to trial.

(Respondent's Ex. 26 at pp. 3-14).

1. Procedural Default

Initially, Respondent asserts that Petitioner's involuntary plea claim is procedurally defaulted because Petitioner brought it in an untimely motion to withdraw plea under rule 3.170, and also abandoned pursuit of his Rule 3.850 motion when he had opportunity to do so at the state evidentiary hearing. Then, when Petitioner raised the claim again in his second Rule 3.850 motion, Respondent asserts that the state court denied it as successive.

Before a claim is procedurally barred from federal review, a state court must reject reviewing the claim based on the procedural deficiency.

Thus, the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for

its disposition of the case."

*Harris v. Reed*, 489 U.S. 255, 262 (1989), quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). Also, the court must state that it is enforcing the procedural rules. "[I]f 'it fairly appears that the state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement' that its decision rests upon adequate and independent state grounds." *Harris v. Reed*, 489 U.S. at 261, quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983). Consequently, citing to the state procedural rule and stating that the claim "could have been raised on direct appeal" or in some prior proceeding is insufficient. *Harris v. Reed*, 489 U.S. at 266. *See also Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim."), *cert. denied*, 513 U.S. 1061 (1994). Consequently, the initial question is whether the state court issued a "plain statement" applying the independent and adequate state procedural bar.  This Court finds that it did not.

The state court stated that the claims raised in Claim One (involuntary plea claim) of Petitioner's second 3.850 motion "appeared successive." (Respondent's Ex. 26 at p. 4).  The state court subsequently found that the "allegations in Claim One" were successive. (Id.).  Nevertheless, the state court "in an abundance of caution" decided to address "the merits of Claim One in the event it has not been properly deemed successive."  (Id.).

This Court concludes that there is no plain statement that the state court denied Petitioner's involuntary plea claim as successive.  Further, it clearly addressed the claim on the merits. (Id. at p. 14).  Moreover, it addressed Ground Two (the ineffective assistance of counsel claims) of

Petitioner's second Rule 3.850 motion on the merits.  If the application of the procedural bar is not plainly stated in the state court's opinion, this Court must decline to apply a procedural bar and instead address the federal issue on the merits. *Coleman*, 501 U.S. at 734-35; *Harris*, 489 U.S. at 263.

2. Merits

       a. Involuntary plea

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available. *See Henderson v. Morgan*, 426 U.S. 637, 645 (1976).  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (citations and internal quotations omitted).

Petitioner does not demonstrate that he did not understand the charges against him, or the consequences of the plea, and does not allege that he was coerced into entering his plea. "[R]epresentations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as

are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S.

63, 73-74 (1977); *United States v. Gonzalez-Mercado* , 808 F.2d 796, 800 n. 8 (11 th Cir. 1987)

("[T]here is a strong presumption that the statements made during the [plea] colloquy are true.").

The record reveals that Petitioner's plea was knowing and voluntary. He understood the

charges and possible sentences, and was aware of the rights he was giving up when entering the plea

(Respondent's Ex. 1, Vol. I at pp. 73-77). He admitted that nobody made any promises about what

his sentence would be (Id.). He stated that he had been hospitalized for a mental or emotional

problem, was taking medication for that problem, and that neither his medication or his mental or

emotional problem was interfering with his ability to understand the proceedings (Id.). He stated he

was satisfied with counsel (Id.). His attorney explained the elements of the offenses to him

(Respondent's Ex. 25, Vol. II at pp. 310, 313).

Petitioner blames his counsel for failing to advise him that involuntary intoxication may have

furnished a viable defense, and that he could have been convicted of the lesser included offense of

vehicular homicide, for abandoning a motion to suppress the blood-alcohol evidence, and for

misleading him into believing that he would only qualify for youthful offender status by entering a

plea. Petitioner does not, however, allege he was unaware, when he pled, that he had a right to

present defenses at a jury trial, or did not understand the charges against him. Nor does Petitioner

contend he was unaware, prior to entry of his plea, that counsel had investigated the state's evidence

and Petitioner's potential defenses. Petitioner's knowing and voluntary plea terminated further

inquiry into the state's proof, as well as possible defenses. *See Neely v. Pennsylvania*, 411 U.S. 954,

957 (1973) ("A guilty plea constitutes a waiver of the fundamental rights to a jury trial . . . and to be

convicted by proof beyond all reasonable doubt.").

Moreover, counsel testified at the evidentiary hearing that he did discuss the involuntary intoxication defense with Petitioner's parents (Respondent's Ex. 25, Vol. I at pp. 131-32), and that based on the evidence, involuntary intoxication was not a viable defense (Id. at pp. 204-05). He also testified that he discussed the lesser included offense of vehicular homicide with either Petitioner, his parents, or all of them (Id. at p. 141). He testified, however, that "we had tremendous problems overcoming" the DUI manslaughter charges (Id. at p. 144), and that he believed there was no question that the State could prove the elements of DUI manslaughter (Id. at p. 150). Counsel testified that he discussed with Petitioner and his family the motion to suppress the results of the tests on the blood taken by the officers at the scene of the crash, but advised them that he would not likely prevail on the motion (Respondent's Ex. 25, Vol. II at pp. 217-18). Further, he testified that even if the motion was granted, there were still the test results from the blood taken at the hospital (Id. at p. 218). He testified that he was concerned about damaging testimony coming out at the hearing on the motion to suppress regarding Petitioner's behavior at the scene of the crash that would cast him in a bad light in front of the judge (Id. at p. 219). Finally, counsel testified that he discussed youthful offender status with Petitioner's parents, and believed he discussed the issue with Petitioner (Respondent's Ex. 25, Vol. I at p. 154). He testified that he did not tell Petitioner that a youthful sentence was not possible if he proceeded to trial, and in fact told him that it was possible (Respondent's Ex. 25, Vol. II at pp. 241-42). He also testified that he informed Petitioner that there was little chance the judge would impose a youthful offender sentence (Id.). Counsel's February 20, 1998 letter to Petitioner and his parents did not indicate that Petitioner was required to enter a plea before he was eligible to be sentenced as a youthful offender. (Id. at p. 327). Petitioner implies that before he entered his plea, he relied on information in the NCIA's Alternative Sentencing Report that

22

indicated in pertinent part that he had to enter a guilty or nolo contendere plea before he was eligible for a youthful offender sentence (Respondent's Ex. 1, Vol IV at p. 321). It appears that the report was submitted to Petitioner, his counsel, the state attorney, and the trial judge on March 6, 1998 (Id. at pp. 302-03). Petitioner entered his plea on January 28, 1998 (Respondent's Ex. 1, Vol. I at pp. 68-80). Thus, he could not have relied on the report when he entered his plea.

Finally, Petitioner claims that counsel told him that if he proceeded to trial and lost, the court would likely sentence him at the top of the Sentencing Guidelines, but if he entered a plea, the court would likely impose a downward departure sentence. Counsel testified that he never told Petitioner that if he entered a plea, that the court would most likely impose a downward departure sentence (Id. at p. 242). Moreover, counsel clearly informed Petitioner and his parents that the evidence against Petitioner was overwhelming, that a guidelines sentence would likely be 22 to 28 years, and that in his opinion the best way to minimize Petitioner's sentence would be for Petitioner to cooperate, show remorse, and try to get the judge to deviate downward from a guidelines sentence (Respondent's Ex. 25, Vol. II at pp. 317-18).

b. Ineffective Assistance of Counsel

Petitioner's claims of ineffective assistance of counsel are foreclosed by his voluntary plea of nolo contendere. Federal habeas corpus review of claims raised by a petitioner who has entered a guilty plea is limited to "the nature of the advice and the voluntariness of the plea, not the existence of an antecedent constitutional infirmity." *Tollett v. Henderson*, 411 U.S. 258, 266 (1973).

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims related to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Id.* at 267. "[A] guilty plea is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Although guilty pleas foreclose most claims from collateral attack, *see United States v. Broce*, 488 U.S. 563, 569 (1989), a plea does not bar the collateral review of ineffective assistance of counsel claims to the extent that the alleged ineffectiveness bears upon the voluntariness of the guilty plea. *See Hill*, 474 U.S. at 53-59. A prisoner may challenge his guilty plea on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett*, 411 U.S. at 267; *see also, Stano v. Dugger*, 921 F.2d at 1150-51 ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove 'serious derelictions in his counsel's advice regarding the plea.'") (citation omitted); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) ("Smith's guilty plea was voluntarily and knowingly made, [thus] he cannot now attack the ineffectiveness of his counsel in any respects other than as the alleged ineffectiveness bears upon counsel's faulty advice that coerced a guilty plea."); *see also, United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.)(voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant, including claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered guilty plea involuntary), *cert. denied*, 531 U.S. 919 (2000).

Petitioner raises matters occurring prior to entry of his nolo contendere plea, rather than matters occurring contemporaneously with the plea. The scope of federal habeas inquiry in Petitioner's case is limited to whether his plea was voluntarily and intelligently made, and this Court is precluded from inquiring into any antecedent constitutional infirmities. *See Tollett*, 411 U.S. at 266. Thus, Petitioner's ineffective assistance of counsel claims are not reviewable by this Court.

However, even if Petitioner did not waive any aspect of Ground One when he entered his

nolo contendere plea, he still would not be entitled to the relief he seeks. He fails to meet his burden under the AEDPA standards governing review of the state decision. The state record conclusively establishes that Petitioner understood the charges against him and the consequences of his plea, including the waiver of his constitutional rights, and that he voluntarily chose to plead without being coerced to do so. Further, for the reasons stated by the state post-conviction court, Petitioner's claims that counsel was ineffective in: 1) failing to advise him regarding the involuntary intoxication defense and the lesser included offense of vehicular homicide; 2) advising him that if he proceeded to trial, he would not qualify for youthful offender status; 3) abandoning the motion to suppress the blood-alcohol evidence; and 4) informing him that if he proceeded to trial and lost he would likely receive a sentence at the top of the Sentencing Guidelines, but would likely receive a downward departure sentence if he entered a plea, were reasonably rejected. The record establishes that Petitioner's attorney did not provide ineffective assistance of counsel with regard to petitioner's decision to plead nolo contendere.

Accordingly, the Court finds that Petitioner has failed to establish that the state court's denial of these claims was either contrary to, or an unreasonable application of federal law, or was based on an unreasonable determination of the facts. Thus, Ground One does not warrant federal habeas relief.

**Ground Two**

In Ground Two, Petitioner contends that his "plea was involuntary as he originally received a sentence based on unconstitutional sentencing guidelines in violation of the 14th Amendment of the U.S. Constitution." (Dkt. 1 at p. 9). Petitioner asserts that at the time he entered his plea in 1998, the guidelines sentence under the 1995 state sentencing guidelines was a minimum of 26 years in

prison, and a maximum of 43 years in prison (see Respondent's Ex. 12, Vol. I at pp. 7-8).  He was

sentenced to 26 years imprisonment.  The 1995 state sentencing guidelines, however, were

subsequently held unconstitutional.  When he was resentenced in 2001, the guidelines sentence was

a minimum 15 year prison term, and a 25 year maximum prison term (Id. at pp. 32-33).  Essentially,

Petitioner argues that his plea was involuntary because at the time of his plea, the state sentencing

guidelines used in his case were unconstitutional.  He asserts that had he known at the time he

entered his plea that the maximum sentence under the guidelines was 25 years in prison, he would

not have entered a plea, but would have proceeded to trial.

Respondent asserts that this claim is procedurally defaulted because in state court, Petitioner

did not timely raise the constitutional dimension of this claim in a timely Rule 3.170 motion or Rule

3.850 motion, and then on appeal (Dkt. 8 at pp. 47-48).  The Court agrees.  Petitioner did not raise

this claim in either his December 1, 2000 Rule 3.850/Rule 3.170(f) motion (Respondent's Ex. 12,

Vol. I at pp. 36-45), or his November 25, 2003 3.850/Rule 3.170(f) motion (Respondent's Ex. 25,

Vol. I at pp. 38-52).  Nor did he raise the claim in his June 12, 2006 Rule 3.800(a) motion

(Respondent's Ex. 32).

A state prisoner must exhaust all available state court procedures before seeking federal

habeas review. 28 U.S.C. § 2254(b); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

When a petitioner fails to properly exhaust claims in state court and is barred from raising claims in

state court by applicable procedural rules, such claims are procedurally defaulted.   *Henderson v.*

*Campbell*, 353 F.3d 880, 891 (11th Cir. 2003); *Snowden*, 135 F.3d at 736 ("[W]hen it is obvious that

the unexhausted claims would be procedurally barred in state court due to a state-law procedural

default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by

26

state law as no basis for federal habeas relief."). Petitioner's claim is now barred by the two-year limit of Rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.) (recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S. 834 (1990), and by the state's successive petition doctrine. *See e.g., Pope v. State*, 702 So. 2d 221, 223 (Fla. 1997)(successive post-conviction relief motions filed after the expiration of the time limit must be based on newly discovered evidence). Because Petitioner shows neither cause and prejudice nor manifest injustice to overcome the procedural default, the review of Ground Two is procedurally barred.

Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three**

In Ground Three, Petitioner complains that his "sentences exceed the statutory maximum and are illegal and violate the 14th amendment of the U.S. constitution [sic]." (Dkt. 1 at p. 12). Specifically, he asserts that at resentencing, the enhancement of his sentence by the state trial court's assessment of victim injury points violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), because the judge rather than the jury made the finding of victim injury.[4]

The state court denied this claim, stating:

> After the postconviction evidentiary hearing, Counsel for the Defendant submitted to the Court a Notice of Supplemental Issue. In this notice, the Defendant cites two additional issues for the Court's consideration: (a) *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies because Defendant's sentence was "enhanced by judicial fact finding" and (b) the validity of Defendant's sentence is undermined pursuant to *Blakely v. Washington*, 124 S. Ct. 2531(2004) (Defendant's counsel does not expound any further on these arguments).

---

[4]Respondent asserts that this claim is procedurally defaulted because Petitioner's counsel did not raise this claim in his brief on appeal from the denial of his Rule 3.850 motion. Although the claim was not raised in Petitioner's Initial Brief (Respondent's Ex. 27A), it was raised in Petitioner's Supplemental Brief (Respondent's Ex. 27B). Thus, this Court does not find that the claim is procedurally barred from review on the merits.

With respect to the first issue, the Defendant is presumably arguing that the victim injury should have been submitted to a jury and proved beyond a reasonable doubt pursuant to the holding in *Apprendi*. The fact that Defendant entered a plea of *nolo contendere* to all of the charges, thus, waiving his right to a jury finding on the issues, places him outside of the holding of *Apprendi*. *See Hindenach v. State*, 807 So. 2d 739 (Fla. 4th DCA 2002). As in *Hindenach*, this Court finds that, by entry of his plea to the charges of DUI manslaughter, DUI with serious bodily injury, and DUI with property damage or personal injury, his subsequent admission that he killed two victims and seriously injured three others, and the surviving victims' testimony, the Defendant has waived any right to a jury finding to sustain the victim injury points on his 1994 guidelines scoresheet. (Transcript of Defendant's testimony at the March 12, 1998 sentencing hearing attached).

With respect to the second supplemental issue, *Blakely* does not apply to cases on collateral appeal that become final prior to its issuance. *See Burrows v. State*, 29 Fla. L. Weekly D2619 (Fla. 2d DCA 2004). Defendant's sentence became final 30 days from November 29, 2001, the date his sentence was reconsidered pursuant to *Smith*, *supra*. Therefore, *Blakely* is not applicable to Defendant's claim.

(Respondent's Ex. 26, Vol. I at pp. 78-79).

*Apprendi* established that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.*, 530 U.S. at 490. In *Blakely*, the Supreme Court clarified that the relevant "statutory maximum for *Apprendi* purposes is the maximum a judge may impose solely on the basis of the facts reflected in the jury verdict *or admitted by the defendant*." *Id.*, 542 U.S. at 303-04 (emphasis added). During the March 12, 1998 sentencing hearing, Petitioner admitted that his actions "killed two little babies." (Respondent's Ex. 25, Vol. IV at p. 635). Moreover, "[a] plea of nolo contendere admits the facts for the purpose of the pending prosecution." *Vinson v. State*, 345 So. 2d 711, 713 (Fla. 1977). The Information alleged Petitioner caused the death of two individuals, serious injury to another, and damage to the property and/or person of two others (Respondent's Ex. 1, Vol. I at pp. 16-18). During the January 28, 1998 plea hearing, the State presented a factual basis

for the charges that indicated in pertinent part that two children died, a third child suffered serious injuries including a broken wrist, leg, and pelvis, the mother suffered neck and back injuries, and the father sustained broken ribs, cuts, and bruises (Id. at pp. 78-79).

The record supports the state court's findings on this issue, and Petitioner fails to cite any decision by the United States Supreme Court holding that a sentence imposed based on facts admitted by the defendant violates the Sixth Amendment right to a trial by jury. Federal law is to the contrary, as demonstrated by the holding in *Booker* reaffirming *Apprendi*: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a *plea of guilty* or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 244 (2005) (emphasis added).

Petitioner entered a plea of nolo contendere, which is treated as a guilty plea for all purposes related to the case.[5]  Thus, Petitioner's sentence is not illegal under *Apprendi*.

Petitioner has failed to rebut the presumption of correctness accorded the state court's factual findings.  Having further failed to demonstrate that the state court's rejection of this claim is contrary to or an unreasonable application of United States Supreme Court precedent, Petitioner has not presented a viable claim for relief under § 2254(d)(1).  Accordingly, Ground Three does not warrant federal habeas relief.

**Ground Four**

---

[5]Since a plea of nolo contendere admits guilt for the purposes of the case, *see Hudson v. United States*, 272 U.S. 451, 455 (1926); *Norman v. McCotter*, 765 F.2d 504, 509-11 (5th Cir. 1985); *Williams v. Wainwright*, 604 F.2d 404, 407 (5th Cir. 1979), "the law applicable to a guilty plea is also applicable to a plea of nolo contendere." *Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990) (citations omitted). *See also Bonner v. City of Prichard*, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court.).

In Ground Four, Petitioner complains that his due process rights under the Fourteenth Amendment were violated because his sentence exceeds that which is authorized by law. Specifically, Petitioner asserts that his 25 year prison sentence is illegal because "[t]here is no explicit authority in Florida's statutory scheme for the trial court to increase a recommended sentence by 25% if the resultant discretionary sentence, as opposed to the recommended sentence, would exceed the statutory maximum in the instant case." (Dkt. 1 at p. 16). He concludes that his "sentence is illegal and [he] should be resentenced without the 25% discretionary variation." (Id. at p. 17).

Petitioner fails to raise a constitutional issue with this claim because "federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). This limitation on federal habeas review applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. *See Branan*, 861 F.2d at 1508; *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976). This claim raises only issues of state law and provides no basis for federal habeas corpus relief. *See Carrizales v. Wainwright,* 699 F. 2d 1053, 1054-1055 (11th Cir. 1983). Thus, Ground Four does not warrant federal habeas relief.

**Supplemental Reply**

On July 17, 2009, Petitioner filed his "Supplement to Petition for Writ of Habeas Corpus Traverse to States [sic] Show Cause Response" ("supplement") (Dkt. 16). It appears that Petitioner attempts to raise two new grounds for relief in his supplement: 1) the state trial court denied him due process during the state post-conviction proceedings; and 2) the Respondent has violated his right to due process by misrepresenting the law and facts in arguing that Petitioner's claim that his

sentence is illegal pursuant to *Apprendi* and *Blakely* is procedurally barred.

First, Petitioner's attempt to raise these new claims in his supplement is not authorized by the applicable rules. Petitioner was required to state all of his claims in his petition. See Rule 2(c), Rules Governing Habeas Corpus Cases Under Section 2254 ("The petition must: (1) specify all the grounds for relief available to the petitioner . . ."). He may not amend his petition as a matter of course by including new independent claims in his supplement, since Respondent had already served its answer. See Fed. R. Civ. P. 15(a) (a party is permitted to amend a pleading once "as a matter of course" at any time before a responsive pleading is served or, otherwise, only by leave of court or by written consent of the adverse party); Rule 11 of the Rules Governing Section 2254 Proceedings (district court may apply the Federal Rules of Civil Procedure consistent with the Rules Governing Section 2254 Proceedings).

Petitioner did not raise these claims in his petition, did not seek leave to amend his petition to add these claims, and is barred from raising it in his supplement/supplemental reply, since Respondent has not been afforded an opportunity to address them. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (traverse is not proper pleading to raise additional grounds for relief; in order for state to be properly advised of additional claims, they should be raised in amended petition or statement of additional claim); *see also, Klauer v. McNeil*, No. 3:07cv541/LAC/EMT, 2009 U.S. Dist. LEXIS 66398, 2009 WL 2399928, at *30 (N.D. Fla. July 31, 2009);  *Cleckler v. McNeil*, No. 3:07cv283/MCR/EMT, 2009 U.S. Dist. LEXIS 20741, 2009 WL 700828, at *11 n.4 (N.D. Fla. Mar. 16, 2009).

Second, the AEDPA limitation period expired long before Petitioner filed his supplement. Petitioner's claim that the state court denied him due process during the state post-conviction

proceedings does not relate back to any claim raised in his petition. Thus, the claim is untimely. *Cf.*
*Mabry v. United States*, 336 Fed. Appx. 961, 963 (11th Cir. 2009) (unpublished opinion) ("If a
prisoner amends his § 2255 motion after the statute of limitations expires, the new claims are
untimely unless they relate back under Rule 15(c) to one of the claims in the original motion.")
(citation omitted).

Third, Petitioner's claim that the state court denied him due process during the state post-
conviction proceedings does not warrant federal habeas relief. It is well established in the Eleventh
Circuit that a prisoner's challenge to the process afforded him in a state post-conviction proceeding
does not constitute a cognizable claim for habeas corpus relief. This is so, because such a claim
represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement
itself. *Carroll v. Secretary, DOC, Fl. Attorney Gen.*, 574 F.3d 1354, 1366 (11th Cir. 2009) (holding
that habeas petitioner's claim, that the state court violated his due process rights when it summarily
denied his post-conviction claim without an evidentiary hearing, did not state a claim on which a
federal court may grant habeas relief); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)
(holding that habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due
process did not state a basis for habeas relief because the claim "[went] to issues unrelated to the
cause of petitioner's detention.").

Finally, Petitioner's claim that Respondent has violated his right to due process in this federal
habeas proceeding by misrepresenting the law and facts in arguing that Petitioner's *Apprendi* and
*Blakely* claim is procedurally barred does not warrant federal habeas relief.  First, the claim does not
challenge the underlying state conviction.  Second, Petitioner has not shown that Petitioner has
intentionally misrepresented any facts or law.  Third, the Court concluded, *supra*, that Petitioner's

*Apprendi/Blakely* claim is not procedurally barred, and addressed the claim on the merits (See Ground Three).  Thus, Petitioner cannot show that he was denied due process.

## EVIDENTIARY HEARING

An evidentiary hearing is unnecessary as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

Accordingly, the Court **ORDERS** that the petition for writ of habeas corpus (Dkt. 1) is **DENIED**.  The clerk is directed to enter judgment against Petitioner, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  (Id.).  "A [COA] may issue... only if the applicant has made a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on _February 22ⁿᵈ_, 2011.

JAMES D. WHITTEMORE
United States District Judge

SA: sfc
Copy to:
Petitioner, *pro se*
Counsel of record

34